**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZUYIN JIMENEZ, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18-cv-07886 |
| LABORER'S WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, AND LOCAL 225 OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zuyin Jimenez has sued her union, Local 225 of the Laborer's International Union ("Local 225"), along with the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborer's' District Council of Chicago and Vicinity ("the Fund"), for sex discrimination under Title VII and the Illinois Human Rights Act. She alleges that the Fund discriminated against her by refusing to enroll her spouse, Laura Luna, in health insurance coverage that they otherwise extended to opposite-sex spouses. She further alleges that Local 225 offered only one health insurance option to its members through the Fund, despite knowing that same-sex spouses were excluded from that coverage. Both defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). Local 225 argues that Jimenez's complaint should be dismissed as against the Local because she did not sufficiently allege discriminatory action by the Union. For its part, the Fund moves to dismiss because Jimenez and the Fund did not have an employment relationship,

and further because Jimenez did not timely exhaust her administrative remedies. For the reasons discussed below, the Court denies both motions.

## BACKGROUND

Jimenez, a member of Local 225, is entitled through that membership to a health insurance benefit through the Fund. First Am. Compl. ("FAC") ¶ 11-12, ECF No. 21. She married Laura Luna on October 14, 2014., and afterwards applied for health insurance for herself and her spouse. *Id.* at ¶¶ 14-15. On November 17, 2014, after Jimenez had provided her marriage license, the Fund sent Ms. Jimenez a letter stating that "same-sex partners are not eligible dependents," attaching a "Summary Plan Description" with this policy highlighted. *Id.* at ¶¶ 15-18. She then called the Fund and spoke with an employee who told her that the Fund is a private company that will not recognize same-sex marriages. *Id.* at ¶ 21. On November 24, 2014, Jimenez sent a letter to the Fund stating that she believed the Fund's policy was illegal. *Id.* at ¶ 22. The Fund responded by reiterating its stance that same-sex spouses are ineligible for coverage and warned her that she may have to pay the Fund's attorney's fees if she sued them and lost. *Id.* at ¶ 24. Local 225, her union, "was aware that the Fund denied spousal benefits to its gay members," *Id.* at ¶ 19, and "does not offer any other options for health care benefits other than through the fund." *Id.* at ¶ 10.

The Fund amended its plan on May 11, 2015 to extend coverage to same-sex spouses, and Jimenez's spouse Luna obtained health insurance. *Id.* at ¶¶ 26-27. When Luna used her new benefits to get medical care, she discovered she had cancer, which had advanced to the point that a hysterectomy was required. *Id.* at ¶¶ 28-29. Had Luna been seen by a physician earlier, Jimenez alleges, the hysterectomy could have been avoided. *Id.* at ¶ 30. The Equal Employment Opportunity Commission EEOC investigated and determined that there was reasonable cause to believe Jimenez had suffered discrimination in violation of Title VII. *Id.* at ¶ 41. Jimenez subsequently filed this action seeking damages.

**DISCUSSION**

In light of the Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), there can no longer be any dispute that the conduct alleged constitutes sex discrimination, so long as the other requirements of a Title VII claim are met. Had Jimenez been a man seeking spousal coverage for a wife, coverage would not have been denied. She did not receive this coverage because she was a woman seeking coverage for her wife. *See Bostock*, 140 S. Ct. at 1739 (explaining that Title VII's language requires a but-for causation test which "directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause."). Jimenez's sex was a but-for cause of the Fund's denial of spousal coverage. The remaining question is whether Jimenez can seek a remedy against these two defendants under Title VII.

Defendants argue that they cannot be liable under Title VII and seek dismissal of the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Local 225 contends that since it is not an agent or fiduciary of the Fund, it cannot be held liable; and further that Jimenez did not plead sufficient facts to state a claim against Local 225. Def. Local 225 Mot. to Dismiss FAC 3-6, ECF No. 23. The Fund maintains that it has no employment relationship with Jimenez that would give rise to Title VII liability; and also urges the Court to dismiss the FAC for failure to exhaust administrative remedies before the EEOC. Def. Fund Mot. to Dismiss FAC 4-7, ECF No. 25. The Court addresses the defendants' arguments in turn.

**I.    Local 225**

Jimenez's allegations, in Local 225's view, are conclusory and lack sufficient detail to implicate Local 225 in the Fund's decision to deny health care eligibility to Ms. Luna. Local 225 Mot. at 3-5, ECF No. 23. Local 225's argument boils down to this: if the complaint sufficiently alleges discriminatory action by anyone, Jimenez's dispute is with the Fund, not Local 225, and

3

therefore the Court should dismiss her lawsuit against them. As explained below, the Court finds that Local 225, as a labor organization, is liable under Title VII insofar as it fails to fulfill its function as an agent of its members, and that Jimenez has plausibly alleged such a failure here.

### A. Local 225 is liable as an agent of its members.

Title VII governs Local 225 as a labor organization and makes it unlawful "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c). This clause applies to "the union's role as the employees' agent "in bargaining and in implementing contracts." *Maalik v. Int'l Union of Elevator Constructors, Local* 2, 437 F.3d 650, 652 (7th Cir. 2006). "If [a union] discriminates in the performance of its agency function, it violates Title VII, but not otherwise." *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). Unions can be held liable for the discriminatory conduct of other parties "only if they know (or ought to know) what is going on and choose to do nothing[.]" *See Maalik*, 437 F.3d at 653.

Local 225 thinks that its relationship with the Fund, not with Jimenez, is dispositive here. It argues that since the Local is neither an agent nor a fiduciary of the Fund, it cannot be liable for any discriminatory actions that the Fund took against Jimenez. Local 225 Mot. at 3-4. In support of its argument, Local 225 cites *Waggoner v. Dallaire*, 649 F.3d 1362 (9th Cir. 1981), a case that dealt with the enforceability of a collective bargaining agreement as it pertained to the collection of employer contributions for fringe benefits. Local 225 Mot. at 3. To the extent the *Waggoner* Court shed light on agency theory, it did so only in the context of contract law. It has nothing to say about whether Local 225 can be held liable under Title VII. Local 225's arguments about its role as a fiduciary are similarly unilluminating—that concept is relevant in ERISA cases, not Title VII cases. Local 225 Mot. at 4.

In response, Jimenez argues that the Supreme Court's decision in *Arizona Governing Commission for Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073 (1983) dictates that Local 225 is liable. Pl. Resp. to Local 225 Mot. at 5-7, ECF No. 27. That case, she says, stands for the proposition that "a covered entity under Title VII that delegates the payment of compensation or benefits to third parties must ensure there are non-discriminatory options." Pl. Resp. to Local 225 Mot. at 6. But that reads *Norris* too broadly. The *Norris* Court held, *inter alia*, that the companies the respondent's **employer** chose to participate in a sex-discriminatory pension plan were liable under Title VII. *Norris*, 463 U.S. at 1087-89. Nothing in the decision suggests that employers, or unions for that matter, are liable for all discrimination perpetrated by third parties. Decisions in this Circuit make clear that the roles of unions and employers must not be conflated. *Pipefitters*, 334 F.3d at 659 ("The asserted symmetry between employer and union is spurious. The duties of nondiscrimination imposed by sections 703(a) and (c) have reference to the respective roles of company and union in the workplace.")

Local 225's duties to its members are what matter here, not its powers or liabilities vis-à-vis third parties. *See Maalik*, 437 F.3d at 653 ("Local 2 thus is not vicariously liable" for discrimination carried out by plaintiff's fellow employees, "but it *is* liable for its decision to do nothing in response.") (emphasis in original). Thus, the Seventh Circuit has indicated that a union that "refuses to accept blacks as members, or refuses to press their grievances, is guilty of discrimination." *Pipefitters*, 334 F.3d at 659. Similarly, a union that is aware of a discriminatory employment practice—such as the exclusion of protected classes from insurance coverage provided as part of benefits for which the union collectively bargained—can be liable insofar as it failed to fulfill its duty to its members. In the Court's view, this failure could take one of two forms: either the Union bargained for a discriminatory health insurance plan to be provided

5

through the Fund, or it later found out that the health plan was discriminatory and made no attempt to change it. Surely, if a union bargained with an employer to provide health insurance for white union members only, that union would become liable under Title VII for discriminating in its agency function. The result would be the same if the Union knew a health insurance plan was being administered discriminatorily against non-white workers and it failed to address the issue at all. As explained in the next section, Jimenez has adequately pled that the union failed in this manner.

    **B.**  **Jimenez sufficiently put Local 225 on notice of the claim against it.**

According to Local 225, Jimenez's claim that the Union offered its members only one discriminatory option for health coverage comes up short: Jimenez should have pled facts that "support the *conclusion* that Local 225 bargained for a discriminatory welfare plan." Local 225 MTD at 5-6 (emphasis added). At this stage, however, Jimenez need only plead facts that support the *reasonable inference* that Local 225 bargained for a discriminatory welfare plan or otherwise failed to fulfill its agency function as to its LGBTQI members. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

Under the notice pleading standard that govern federal courts, a complaint requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(1). To survive a motion to dismiss, Jimenez "does not need detailed factual allegations," but rather must only provide "the grounds of [her] entitlement to relief" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The facts alleged "must be enough to raise the right to relief above the speculative level." *Id*. In the Title VII context, the Seventh Circuit has emphasized that "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008).

6

Local 225 urges dismissal on the grounds that the complaint did not sufficiently allege the Local was "aware that the Welfare plan denied spousal benefits to its gay members." Local 225 Mot. at 5. At the pleading stage, however, plaintiffs bringing claims under Title VII "may allege the defendant's intent quite generally," *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 781 (7th Cir. 2007), and besides, Jimenez's allegation that the union knew about the discriminatory terms in the Fund's health care plan is plausible. One would expect a union to be aware of the terms it negotiates in collective bargaining agreements, including the terms of health care plans. *See Iqbal*, 556 U.S. at 679 (noting that weighing the sufficiency of a complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Moreover, Jimenez alleges that she received a "summary plan description" with a highlighted provision that "Common law spouses and same-sex partners are not eligible dependents under the plan." FAC at ¶ 18. Since the Fund was allegedly publishing and distributing such documents to Local 225 members, the Court can draw the reasonable inference that the Union knew its members' only healthcare option discriminated based on sex.

Here, Jimenez has plead enough facts to give rise to the plausible inference that Local 225 discriminated in carrying out its agency function. The Fund denied health coverage on account of her spouse's sex. FAC at ¶ 18. That coverage was a valuable benefit that Local 225 extended to its members. FAC at ¶ 12. The Local was aware that the plan was discriminatory, yet its members only had access to that plan. FAC at ¶ 19. From these allegations, the Court can infer that the Union either formed a discriminatory collective bargaining agreement with Jimenez's employer, or that it failed to take up its workers' concerns regarding discrimination in the administration of health insurance benefits. The contours of her claim are clear enough that Local 225 can investigate and

7

prepare a defense, and to the extent the Local can show it fulfilled its agency function with respect to its members, it can present that evidence at a later stage.

**II.     The Fund**

    **A.     The Fund is liable as an agent of Jimenez's employer.**

The Fund argues that since it does not have "an employment relationship" with Jimenez, it cannot be liable for discrimination against her under Title VII.[1] While the Seventh Circuit has not squarely addressed this issue of a welfare fund's liability as an agent of an employer, the Fund's narrow view of the relationships covered by Title VII finds little support in either the statutory language or in similar cases that have arisen in this Circuit and others. Third parties are not universally liable for discriminatory employment determinations; however, federal courts have recognized, consistent Supreme Court's guidance in *City of Los Angeles, Dept. of Water and Power v. Manhart*, that they can be held liable under certain circumstances. *Id.*, 435 U.S. 702, 718 n.33 (1978). Jimenez plausibly alleges that this is one of those situations.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of an employees' sex. 42 U.S.C. § 2000e-2(a)(1). "Employers" are defined in Title VII as including "any agent" of employers. 42 U.S.C. § 2000e(2). While Title VII does not govern relationships between

---

[1] The defendant points the Court to several cases in the Seventh Circuit where a Plaintiff was found to lack an employment relationship with the defendant. None of these cases are relevant. Jimenez is not alleging that she was an independent contractor (*Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1996), nor is she suing an institution with which she has never been employed for refusing to publish an academic article in one of its journals (*Douglas v. University of Chicago*, 2015 WL 738693 (N.D. Ill. 2015). Similarly, *Mustafa v. NSI International*, 2016 WL 6778888 (N.D. Ill. 2016), apart from bearing my signature and arising under Title VII, is in no way analogous. What's more, in *Mustafa,* the plaintiff's Title VII claim was dismissed (among other reasons) because the plaintiff did not allege the defendant to have been her employer. *Id*. at *4 ("Mustafa's retaliation claims against MLLG fail . . . because Mustafa did not allege that MLLG was her employer"). No "finding" by the Court was required.

employees and third parties, the Supreme Court has emphasized that Title VII covers "any agent" of an employer, and that a covered entity cannot "avoid his responsibilities by delegating discriminatory programs to corporate shells." *Manhart*, 435 U.S. at 718 n.33. Agency liability applies where a third party exercises significant control over an aspect of the plaintiff's employment, where the agent significantly affects access of any individual to employment opportunities, or where an employer delegates sufficient control of some traditional rights over employees to a third party. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 668-69 (7th Cir. 2013) (synthesizing holdings from *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982) and *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 17 (1st Cir. 1994)).

The first part of the disjunctive test articulated in *Alam* was drawn from *Carparts*, where the First Circuit explained that a third party exercises significant control where it has the authority to determine the level of benefits. *Carparts*, 37 F.3d at 17. In *Carparts*, the court held a health benefit plan and its administering trust liable under the Americans with Disabilities Act while interpreting a statutory definition of "employer" that is identical to Title VII's in all relevant respects. *Compare* 42 U.S.C. § 2000e(b) *with* 42 U.S.C. § 12111(5)(a). The plaintiff, an employer, sued the benefit plan and its administering trust because the defendants placed a lifetime cap on health insurance benefits for AIDS-related illnesses, which exposed the employer to ADA liability. *Id.* at 14. The district court dismissed the case after finding that neither of the defendants directly employed the employee who suffered from AIDS. *Id.* at 16. The Court of Appeals vacated the dismissal, holding that the defendants were liable "if they functioned as Senter's employer with respect to his employee health care coverage, that is, if they exercised control over an important aspect of his employment." *Id.* at 17. While the relationship between employer and the benefit plan

9

was not perfectly clear because the case was at the pleading stage, the latter could be held liable as an agent of the employer so long as it had the authority to determine the level of benefits, and the Court saw dismissal as improper until the plaintiff could develop the record to show this. *Id*.

In *Alam*, the Seventh Circuit also drew upon the Second Circuit's holding in *Spirt v. Teachers Ins. & Annuity Ass'n* recognizing agency liability under Title VII "where the agent significantly affects access of any individual to employment opportunities." 709 F.3d at 669 (citing *Spirt*, 691 F.2d 1054, 1063 (2d Cir. 1982), vacated and remanded on other grounds, 463 U.S. 1223 (1983), *reinstated and modified on other grounds*, 735 F.2d 23 (2d Cir. 1983), *cert. denied*, 469 U.S. 881 (1984)). In *Spirt*, a female professor at Long Island University sued TIAA and CREF, the companies that managed the retirement plan adopted by the University. *Spirt*, 691 F.2d at 1056-57. The two companies were violating Title VII by using sex-based mortality tables to calculate retirement benefits. *Id*. The *Spirt* court recognized that "Plaintiff is clearly not an employee of TIAA-CREF in any commonly understood sense." *Id.* at 1063. But the panel observed that the term "employer" in Title VII "is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities." *Id*. Relevant to the Court's holding were the facts that TIAA and CREF existed "solely for the purpose of enabling universities to delegate their responsibility to provide retirement benefits," that "participation in TIAA-CREF is mandatory" for employees such as the plaintiff, and that the University "share[d] in the administrative responsibilities" that resulted from its employees' participation in TIAA-CREF. *Id.* at 1063. Thus, the Court held that TIAA and CREF could be held liable for sex discrimination.

Jimenez's complaint contains enough detail to support the reasonable inference that this is one of the situations in which a third party can be liable for sex discrimination. She has alleged that the Fund exercised control over her benefits by denying her spousal coverage altogether. The

10

complaint alleges that the Fund's administration of the "Plan Document" includes interpreting its terms, and it includes the authority to make amendments. FAC at ¶¶ 8-9, 26. The Fund exercised this authority by issuing a "Summary Plan Description" that denied coverage to same-sex spouses. *Id.* at ¶ 18. Jimenez spoke with a Fund employee who characterized the denial of eligibility as being squarely within the Fund's discretion, saying that the Fund is a private company that does not recognize same-sex marriages. *Id.* at ¶ 21. The Fund's attorney, in his letter to Jimenez, did not tell her that the Fund lacked authority to alter the eligibility determination, but instead warned her about the cost of litigation. *Id.* at ¶ 24. Therefore, Jimenez's complaint plausibly alleges that the Fund exercised control over an important aspect of the plaintiff's employment. *Alam*, 709 F.3d at 669. As explained in *Carparts*, "if defendants had the authority to determine the level of benefits, they would be acting as an employer who controls this aspect of the employment relationship." *Carparts*, 37 F.3d at 17. As for the factors articulated in *Spirt*, in alleging that the Fund prevented her from accessing healthcare benefits for her spouse, Jimenez has plausibly alleged that the Fund "has the responsibility for determining who qualifies for admission into the pension plan and has the power to significantly affect the access of [an employee] to employment benefits." *Holmes v. City of Aurora*, No. 93 C 0835, 1995 WL 21606, at *4 (N.D. Ill. Jan. 18, 1995). Accordingly, the allegations of the complaint satisfy the agent-as-employer standard established in *Spirt* and recognized by the Seventh Circuit in *Alam*. The precise relationship between the Fund, her employer, and Local 225—for example, whether the Fund exists "solely for the purpose" of enabling employers to delegate their responsibilities, and the extent to which they share in administrative responsibilities—is a matter for discovery, not pleading. *Cf. Carparts*, 37 F.3d at

11

17 ("Only if the litigation is allowed to proceed can plaintiffs develop a record to answer these questions.").[2]

### B. Exhaustion and Timeliness

Finally, the Fund argues that Jimenez failed to timely exhaust her administrative remedies, and as such, her claim must be dismissed. Fund Mot. at 5-7, ECF No. 25. However, as Jimenez points out in her response, there is no requirement at the pleading stage for a plaintiff to establish that she has timely exhausted her administrative remedies. "[F]iling a timely charge of discrimination is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982). The Seventh Circuit recognizes that dismissal pursuant to Rule 12(b)(6) for failure to timely file an EEOC charge is warranted where "the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim." *Mosley v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). If the face of the complaint indicates that an affirmative defense is "airtight," the proper vehicle for such a ruling is a motion under Fed. R. C. Proc. 12(c). *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); *see also, e.g., Burton v. Ghosh*, 961 F.3d 960, 964-65 (7th Cir. 2020) ("The proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings.").

---

[2] Jimenez also posits an alternate route to liability for the Fund—that it is a labor organization under Title VII. The Court disagrees. Title VII defines a labor organization as one that is concerned with a union's special role "of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms of conditions of employment." 42 U.S.C. § 2000e. There is no indication that the Fund has any such role dealing with employers concerning grievances or labor disputes, and as such the Court declines to treat the Fund as a labor organization.

Nothing on the face of Jimenez's complaints indicates that defendants have an airtight exhaustion defense. She alleges that she has exhausted her administrative remedies and that the EEOC has investigated. FAC at ¶ 40-41. As the Supreme Court has said, a plaintiff has several defenses available to a defense based their failure to timely exhaust administrative remedies. *See, e.g.*, *Zipes*, 455 U.S. at 393. Jimenez may, or may not, have an exhaustion problem; and she may, or may not, be able to make out a good solution to that problem. The viability of those defenses, largely fact-dependent, may require factual development; at this juncture, Jimenez cannot be said to have pleaded herself out of court.[3]

The Fund attempts to supplement its exhaustion argument with exhibits attached to its motion to dismiss. Fund Mot., Ex. A-B, ECF Nos. 25-1 and 25-2. Rule 12(b) provides that if "matters outside the pleading are presented to and not excluded to the court, the motion shall be treated as one for summary judgment[.]" Fed. R. Civ. Proc. 12(b). An exception applies in situations where a plaintiff fails to submit documents along with her complaint "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.3d 429, 431 (7th Cir. 1993). Though perhaps important to the viability of the Fund's statute of limitations defense, whether or not Jimenez exhausted her administrative remedies is not central to Jimenez's claim. The Seventh Circuit has explained that "this is a narrow

---

[3] Jimenez also suggests in her response that, under the Lilly Ledbetter Act, the statute of limitations does not bar her claim because a new violation occurred "each time wages, benefits, or other compensation [was] paid." 42 U.S.C. § 2000e-5(e)(3)(A). Given the procedural posture and the resulting dearth of allegations in the complaint anticipating a statute of limitations defense, this issue may require factual development before it can be resolved. A payroll reduction of any employee share of healthcare fees, for example, could arguably constitute a new discriminatory act since it would effectively constitute a higher charge for the healthcare provided by the Fund based on Ms. Jimenez's sex. The Court raises the issue here only to caution that a motion under Rule 12(c), although a permissible basis for asserting an affirmative defense, may not permit resolution of this or any other affirmative defense that requires factual development.

exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). These exhibits do not fall within that narrow exception. As such, the Court declines to consider the exhibits submitted by the Fund at this stage.

*   *   *

For the foregoing reasons, the Court therefore denies defendant Local 225's Motion to Dismiss and defendant Fund's Motion to Dismiss.

Dated: October 8, 2020

John J. Tharp, Jr.
United States District Judge